NOT FOR PUBLICATION



# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>WILLIE N. MOON and ADNETTE M. GUNNELS-MOON,<br>          Debtors. | BAP No. NV-20-1199-BFL<br><br>Bk. No. 13-12466-MKN |
| WILLIE N. MOON; ADNETTE M. GUNNELS-MOON,<br>          Appellants,<br>v.<br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC,<br>          Appellee. | MEMORANDUM[1] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Mike K. Nakagawa, Bankruptcy Judge, Presiding

Before: BRAND, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellants Willie N. Moon and Adnette M. Gunnels-Moon appeal an

order denying their request for attorney's fees and costs under § 362(k)(1)[2] for

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[2] Unless specified otherwise, all chapter and section references are to the

1

defending against an adversary proceeding filed by Rushmore Loan Management Services, LLC ("Rushmore") that Rushmore later voluntarily dismissed. Because the adversary proceeding, in part, sought to challenge the Moons' earlier contempt proceeding against Rushmore for willfully violating the automatic stay, we conclude that at least some of the fees and costs were recoverable by the Moons under § 362(k)(1). Therefore, we VACATE and REMAND.

## FACTS

### A.    Previous events and appeals

The Moons filed their chapter 13 bankruptcy case on March 26, 2013. At the time, their home ("Residence") was subject to two liens. Rushmore held the second lien, which appeared to be entirely underwater.

Thereafter, the Moons moved to value the Residence under § 506(a) to strip off Rushmore's entirely unsecured lien. Rushmore did not respond. On December 5, 2013, the bankruptcy court entered an order granting the valuation motion ("Lien Avoidance Order"). The Lien Avoidance Order provided that Rushmore's claim was reclassified from a secured claim to an unsecured claim, and that its second deed of trust would be avoided upon the Moons' successful completion of their chapter 13 plan.

On April 7, 2014, the bankruptcy court entered an order confirming the Moons' amended chapter 13 plan ("Confirmation Order"). On September 28,

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2016, the bankruptcy court entered an order of discharge for the Moons, discharging their prepetition unsecured debt, including the debt owed to Rushmore. A final decree closing the case was entered on October 3, 2016.

As it turns out, no documents filed during the Moons' chapter 13 case — the bankruptcy notice, any motions, applications, notices of hearings, court orders or other papers — were served on Rushmore due to an address error. The address error stemmed from a mistake made in the creditor matrix when the case was filed and continued throughout the case.

After reopening their bankruptcy case, the Moons filed a motion against Rushmore, seeking to hold Rushmore in contempt for violation of the automatic stay and the discharge injunction ("First Contempt Motion"). The Moons alleged that, between November 2013 and October 2018, Rushmore sought to collect the debt through numerous monthly mortgage statements and other collection letters and hundreds of telephone calls to the Residence. The Moons sought damages for their emotional distress, punitive damages, and attorney's fees.

After an evidentiary hearing in September 2019, the bankruptcy court entered an Order and Memorandum Decision on February 25, 2020, granting the First Contempt Motion and awarding the Moons $100,742.10 in compensatory damages (including $100,000 to Mr. Moon for his emotional distress) and $200,000 in punitive damages for Rushmore's willful violation of the automatic stay under § 362(k)(1) ("First Contempt Order"). *In re Moon*, 613 B.R. 317, 361 (Bankr. D. Nev. 2020). The court declined to award any damages

3

for Rushmore's violation of the discharge injunction because the Moons had not established when Rushmore became aware of the discharge order.

On appeal to the BAP, the Panel reversed the bankruptcy court's $100,000 damage award to Willie for lack of standing, and vacated and remanded the $200,000 punitive damages award for further consideration by the bankruptcy court in light of the significantly reduced compensatory award. The Panel affirmed the bankruptcy court's decision with respect to the discharge injunction. *See Rushmore Loan Mgmt. Servs., LLC v. Moon (In re Moon)*, BAP Nos. NV-20-1057-BGTa & NV-20-1070-BGTa, 2021 WL 62629 (9th Cir. BAP Jan. 7, 2021).

Meanwhile, the Moons sought all of the attorney's fees and costs they incurred for the First Contempt Motion under § 362(k)(1) ("First Fee Motion"). Rushmore opposed the First Fee Motion, arguing that the Moons had not "incurred" any attorney's fees as "actual damages" under § 362(k)(1), because there was no agreement obligating them to pay their attorney, Mr. Christopher P. Burke. Rushmore also argued that if the court was inclined to award the Moons their attorney's fees, any award should be limited to the time spent on their stay violation claim.

After a hearing, the bankruptcy court granted the First Fee Motion, awarding the Moons their attorney's fees and costs of $67,007.94 under § 362(k)(1). The court denied the Moons' request for a fee enhancement.

On appeal, while the Panel agreed that the Moons were entitled to attorney's fees and costs under § 362(k)(1) and affirmed the cost award, it

vacated and remanded the fee award for further findings and consideration by the bankruptcy court. *See Rushmore Loan Mgmt. Servs., LLC v. Moon (In re Moon)*, BAP Nos. NV-20-1144-BTaF & NV-20-1155-BTaF, 2021 WL 62630 (9th Cir. BAP Jan. 7, 2021).

**B.  Rushmore files and dismisses its adversary proceeding.**

Meanwhile, on September 4, 2019, just two weeks before the evidentiary hearing on the First Contempt Motion, Rushmore filed an adversary proceeding against the Moons seeking declaratory relief ("Rushmore Adversary"). Rushmore contended that its second deed of trust was a constitutionally protected property right, that entry of the Lien Avoidance Order without notice violated its due process rights, and that any potential violations of the automatic stay or the discharge injunction by Rushmore were created by the Moons' failure to serve Rushmore. In its prayer, Rushmore sought judgment against the Moons as follows: (1) that the court declare Rushmore was never personally served in the Moons' bankruptcy until the First Contempt Motion; (2) that the court strike the First Contempt Motion because it was a result of a constitutional deprivation of notice to Rushmore and unclean hands by the Moons; (3) that the court strike the Lien Avoidance Order or, alternatively, that Rushmore be awarded monetary damages for the full value of its second deed of trust; and (4) that Rushmore be awarded all attorney's fees and costs for the Rushmore Adversary and the First Contempt Motion.

The Moons moved to dismiss the Rushmore Adversary under Civil Rule 12(b)(6). In short, the Moons argued that the Rushmore Adversary was

an improper collateral attack on the Lien Avoidance Order. They further argued that Rushmore should have sought such relief by motion.

Rushmore opposed the motion to dismiss and moved for summary judgment ("MSJ"). Many, if not all, of the exhibits attached to Rushmore's MSJ were the same exhibits Rushmore offered into evidence at the evidentiary hearing on the First Contempt Motion. In support of its MSJ, Rushmore argued that the Moons' failure to serve Rushmore violated its due process rights and the opportunity to participate in the case and defend its property interest. Rushmore contended that both the Confirmation Order and the Lien Avoidance Order were void as to Rushmore for lack of notice and lack of personal jurisdiction. Rushmore further argued that the First Contempt Motion was brought in bad faith or, at minimum, with unclean hands, because they inappropriately pushed forward with seeking sanctions even though their new attorney was aware of the prior service errors.

The Moons filed a reply to their motion to dismiss and an opposition to Rushmore's MSJ. The hearings for the competing motions were initially continued pending the outcome of the First Contempt Motion, and once that was resolved, were finally scheduled for May 7, 2020.

On May 6, 2020, the Moons sought leave to file a supplemental opposition to the MSJ, which consisted of a declaration from their former bankruptcy attorney and three certified mail receipts in connection with the Moons' service of the valuation motion on Rushmore in September 2013. Rushmore denied receiving service of the valuation motion. In light of the

Moons' new documents, the parties agreed to continue the hearing for the Moons' motion to dismiss and Rushmore's MSJ until June 4, 2020.

On May 22, 2020, Rushmore filed a notice of voluntary dismissal of the Rushmore Adversary under Civil Rule 41(a)(1)(A)(i),[3] which the Moons did not oppose. After a hearing, the bankruptcy court agreed to take all pending matters off calendar and direct the clerk to close the Rushmore Adversary.

**C.     Moons file their second request for attorney's fees and costs.**

The Moons then sought the attorney's fees and costs they incurred in defending against the Rushmore Adversary under § 362(k)(1) ("Second Fee Motion"). The Moons argued they were entitled to a reasonable attorney's fee of $14,398.50 and costs of $12.00, for what they contended was Rushmore's continuing stay violation by filing the Rushmore Adversary which sought to "strike" the First Contempt Motion. Mr. Burke stated in his declaration that he spent 9.4 hours at his previous hourly rate of $500.00 and 16.3 hours at his new hourly rate of $595.00 "dealing with the actions caused by Rushmore's willful stay violation." A billing summary reflecting the services Mr. Burke provided was attached.

Rushmore opposed the Second Fee Motion, arguing that (1) its filing of an adversary proceeding based on the Moons' failure to properly serve it with notice of the bankruptcy or the motion attempting to strip its lien was not a "continuing" violation of the automatic stay, (2) the Moons had not presented

---

[3] Civil Rule 41(a)(1)(A)(i), applicable here by Rule 7041, provides that a plaintiff may dismiss an action without a court order before the opposing party files an answer or a motion for summary judgment.

any legal basis to recover attorney's fees related to the Rushmore Adversary, and (3) the bankruptcy court lacked jurisdiction to award attorney's fees related to the now-dismissed proceeding.

In reply, the Moons argued it was not their contention that the filing of the Rushmore Adversary itself was a stay violation. Rather, they were arguing that having to defend against the Rushmore Adversary, which sought to justify, defend, and negate Rushmore's stay violation and to "strike" the First Contempt Motion, invoked the attorney's fees provision of § 362(k)(1). The Moons further argued that, because the bankruptcy case was still open, the court had jurisdiction to consider the Second Fee Motion despite the voluntary dismissal of the Rushmore Adversary. The Moons requested an additional $2,439.50 for the attorney's fees they incurred in defending the Second Fee Motion.

After a hearing, the bankruptcy court entered an order denying the Second Fee Motion. It determined that Rushmore's filing of the Rushmore Adversary was not a continuation of pre-discharge conduct that violated the automatic stay post-discharge warranting an award of attorney's fees and costs under § 362(k)(1). The Moons timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(A). We have jurisdiction under 28 U.S.C. § 158.

////

////

8

## ISSUE

Did the bankruptcy court abuse its discretion in not awarding the Moons any attorney's fees or costs under § 362(k)(1) for defending against the Rushmore Adversary?

## STANDARDS OF REVIEW

We review de novo questions of subject matter jurisdiction. *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 910 (9th Cir. BAP 1995).

The bankruptcy court's decision whether to award attorney's fees is reviewed for abuse of discretion. *See Easley v. Collection Serv. of Nev.*, 910 F.3d 1286, 1289 (9th Cir. 2018). However, when the principal issue raised on appeal is legal in nature, we review the bankruptcy court's award de novo. *See id.*

The bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are clearly erroneous. *Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112-13 (9th Cir. BAP 2017) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n.20 (9th Cir. 2009) (en banc)).

## DISCUSSION

In the First Contempt Order entered in February 2020, the bankruptcy court found that Rushmore had willfully violated the automatic stay with its repeated collection efforts from December 20, 2014, the date Rushmore was deemed to have had actual knowledge of the Moons' bankruptcy, to September 28, 2016, the date of their discharge. The court awarded the Moons

9

compensatory damages, punitive damages, and, ultimately, attorney's fees and costs under § 362(k)(1). However, the court denied the Moons any attorney's fees or costs under § 362(k)(1) for the Rushmore Adversary, finding that the Rushmore Adversary was not a continuing stay violation and that the Moons could not recover fees and costs incurred as a result of its filing and dismissal years after the automatic stay expired, and years after the discharge was entered.

The Moons argue that the bankruptcy court erred by not awarding the attorney's fees and costs they incurred for having to defend against the Rushmore Adversary, which they contend was filed offensively to strike the First Contempt Motion and justify Rushmore's stay violation. Rushmore counters that the Moons are attempting to raise a new argument on appeal, that fees may be awarded under § 362(k)(1) because the Rushmore Adversary was a "collateral attack" on the First Contempt Motion. Rushmore also argues that once the Rushmore Adversary was dismissed, the bankruptcy court lost jurisdiction over the adversary and could not award fees.

While the Moons did argue before the bankruptcy court that the filing of the Rushmore Adversary was a "continuing" stay violation entitling them to fees and costs under § 362(k)(1), an argument we too reject, they also argued that having to defend against the Rushmore Adversary, which in part sought to defend Rushmore's stay violation and to "strike" the First Contempt Motion, warranted fees and costs under § 362(k)(1). In other words, the Moons did raise the "collateral attack" argument. Unfortunately, the

10

bankruptcy court did not address it, nor did it address Rushmore's threshold argument that the court lacked jurisdiction to consider a fee award since the Rushmore Adversary had been voluntarily dismissed under Civil Rule 41(a)(1)(A).

Rushmore had every right to challenge the validity of the Lien Avoidance Order and the Confirmation Order given the Moons' failure to provide notice, and perhaps the First Contempt Motion was not the best action in which to resolve those issues. However, the Rushmore Adversary, filed just two weeks before the evidentiary hearing on the First Contempt Motion and not dismissed until three months after the First Contempt Order, went further than that. It sought to "strike" the First Contempt Motion and establish that the Moons were responsible for Rushmore's stay violation. Rushmore never filed a substantive response to the First Contempt Motion despite having months to do so, and failed to engage in any meaningful discovery before the evidentiary hearing or file a trial brief. Rushmore chose instead to assert its defenses to the First Contempt Motion in the Rushmore Adversary, which the bankruptcy court aptly described as a "discrete and perhaps unnecessary act undertaken as a belated response to the First Contempt Motion."

"Under the 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Easley*, 910 F.3d at 1290 (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). Here, the explicit statutory authority is § 362(k)(1), which

11

authorizes an award of attorney's fees and costs to the debtor for successfully prosecuting an action for damages under § 362(k)(1). *Am.'s Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc); *see also Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995) (an award of costs and attorney's fees is mandatory upon a finding that the stay was willfully violated).

In the Rushmore Adversary, the Moons were compelled to defend against certain arguments Rushmore should have, but failed to, raise in defense of the First Contempt Motion. And the Moons had to continue to defend against those arguments after the bankruptcy court had already rejected them in the First Contempt Order and awarded the Moons damages for Rushmore's willful stay violation. The Moons incurred attorney's fees and costs as a result.[4] Rushmore cannot now shield itself from those fees and costs simply because their defense to the First Contempt Motion was brought under the guise of an adversary proceeding. That amounts to an end run around the statute and exalts form over substance. In fact, we see no other reason for why Rushmore chose to raise nearly all of its defenses to the First Contempt Motion in the Rushmore Adversary, other than to avoid payment of the Moons' attorney's fees and costs under § 362(k)(1). Thus, despite labels, at least some of the fees and costs the Moons incurred in the Rushmore

---

[4] We, as did another Panel, reject Rushmore's argument that the Moons did not "incur" any attorney's fees as "actual damages" under § 362(k)(1), even though they had no personal obligation to pay Mr. Burke out-of-pocket for his services. *See Rushmore Loan Mgmt. Servs., LLC v. Moon (In re Moon)*, BAP Nos. NV-20-1144-BTaF & NV-20-1155-BTaF, 2021 WL 62630 (9th Cir. BAP Jan. 7, 2021).

Adversary were incurred as part of their stay violation damages claim against Rushmore under § 362(k)(1).

In addition, we reject Rushmore's argument that the bankruptcy court was divested of jurisdiction to consider the Second Fee Motion given the voluntary dismissal of the Rushmore Adversary. In support of its argument, Rushmore cites *American Soccer Co., Inc. v. Score First Enterprises, a Division of Kevlar Industries*, 187 F.3d 1108 (9th Cir. 1999). There, the plaintiff filed a notice of voluntary dismissal under Civil Rule 41(a)(1)(A)(i), dismissing the complaint without prejudice. After the defendant successfully moved to vacate the dismissal, the district court dismissed the complaint with prejudice and ordered the plaintiff to pay attorney's fees to the defendant. The Ninth Circuit Court of Appeals reversed, holding that under Civil Rule 41(a)(1) a plaintiff has an "absolute right" to voluntarily dismiss an action when the defendant has not yet served an answer or motion to dismiss, and that such right may not be extinguished or circumscribed by the court. *Id.* at 1110. Accordingly, the district court lacked jurisdiction to vacate the voluntary dismissal and rule on the merits. *Id.* at 1112.

*American Soccer* did not hold, as Rushmore contends, that a voluntary dismissal prevents a defendant from moving for attorney's fees and costs. That is because "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending[,]" including a request for attorney's fees. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *Teece v. Kuwait Fin. House (Bahrain) B.S.C.*, 667 F. App'x 931, 932 (9th Cir. Aug.

3, 2016) (holding that the district court had jurisdiction over the "collateral matter" of defendant's motion for attorney's fees despite plaintiff's voluntary dismissal under Civil Rule 41(a)(1)(A)(i)); *Budanio v. Saipan Marine Tours*, *Inc.*, 22 F. App'x 708, 710 (9th Cir. Oct. 2, 2001) (holding that the district court retained jurisdiction to consider a request for attorney's fees despite plaintiff's voluntary dismissal); *Turner v. Vilsack*, No. 3:13-cv-1900, 2016 WL 1048893, at *3 (D. Or. Mar. 14, 2016) (applying the same rule to a stipulated dismissal under Civil Rule 41(a)(1)(A)(ii) in a case under the Equal Access to Justice Act).[5]

Consequently, the Moons are entitled to attorney's fees for the Rushmore Adversary under § 362(k)(1), at least those fees they incurred in defending against Rushmore's arguments in defense of its stay violation. On remand, the bankruptcy court must award the Moons a reasonable attorney's fee and costs.

## CONCLUSION

For the reasons stated above, we VACATE and REMAND the Second Fee Order for further proceedings consistent with our decision.

---

[5] Rushmore asserted in the notice of voluntary dismissal that the Rushmore Adversary was dismissed "with prejudice" as to the claims raised in that proceeding. However, the bankruptcy court noted in the Second Fee Order that, because the issue of Rushmore's notice of the automatic stay was never litigated in the Rushmore Adversary, preclusive effect could not be given to the voluntary dismissal with prejudice, citing *Amadeo v. Principal Mutual Life Insurance Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002) and *Board of Trustees. v. Noorda*, No. 2:16-cv-00170, 2018 WL 1568679, at *3 (D. Nev. Mar. 30, 2018).