[No. D011864. Fourth Dist., Div. One. June 13, 1991.*]

PETER B. OPSAL, Plaintiff and Respondent, v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant and
Appellant.

---

*Review granted October 3, 1991. Opinion ordered published July 9, 1992.

COUNSEL

Buckner & Haile and Mark F. Marnell for Defendant and Appellant.

John W. Tower for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—A jury awarded plaintiff Peter Opsal substantial contract and tort damages based on his argument that defendant United Services Automobile Association (USAA) improperly denied a claim for reimbursement under Opsal's homeowners insurance policy. While we agree with Opsal that he was entitled to coverage under the policy, we conclude the evidence was insufficient to meet the higher standard required to support an award of compensatory and punitive damages in tort.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1977 Peter Opsal, an active duty United States Navy officer, and his wife, Sandy, purchased a single-family residence on Healy Street in Santee. Opsal obtained homeowners insurance for the residence from USAA.

Between 1980 and 1983, the Opsals lived elsewhere and rented out the Healy Street property. In December 1983, they returned to Healy Street and replaced the carpeting in the house. Peter Opsal noticed a crack in the slab foundation "running from the entryway through the living room through a corner of an adjacent bedroom."[1] It was not until 1986, however, that the Opsals learned the extent of the damage. They were in the process of selling the house when a Federal Housing Administration inspector refused to approve a prospective buyer's loan because of the cracked slab. Following that refusal, the Opsals filed a claim with USAA.

A soils engineering firm engaged by USAA conducted an investigation and filed a report in September 1986, a copy of which was received by the Opsals. The report identified improperly compacted fill soils and inadequate footing depth as contributing causes of the settlement and cracking.

USAA formally denied the Opsal's claim in December 1986. The abstruse denial letter quoted and assertedly relied on the full text of numerous

---

[1] The record does not reflect the width of the crack at the time Peter Opsal first observed it, although it apparently did not interfere with the installation of the new carpeting. The soils report prepared in 1986 describes the crack as one-half to one inch in width.

obviously inapplicable exclusions in USAA's HO-3 policy.[2] Included among the listed exclusions, however, were two on which USAA continues to rely. The policy excluded coverage for loss "[c]aused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to . . . earth sinking, rising or shifting . . . ." Also excluded was loss "[b]y . . . inherent vice [or] latent defect . . . ." The letter stated, "The exclusions which are relied upon are set forth in full below and are relied upon in their entirety. An analysis does not point to any proximate cause of loss which is independent of the excluded perils. Nor has our investigation revealed any non-excluded moving proximate cause of the loss." Nowhere did the denial letter mention the soil engineer's conclusion that third party negligence was at least partly to blame for the crack in the foundation. Nor did the letter suggest that a loss caused by third party negligence would be a covered loss under the policy.

The denial was not based solely on the lack of coverage provided by the policy. USAA explained that the policy included the standard one-year limitations period within which the insured must bring an action to recover benefits under the policy. The letter concluded, "Our investigation has revealed that you were aware of the damage which is the subject of the claim for more than one year prior to the claim presentation. Thus, the policy limitations period provides a separate basis on which our decision is based."

Following the denial, Opsal filed suit against USAA alleging breach of contract and breach of the implied covenant of good faith and fair dealing, seeking both compensatory and punitive damages. Opsal argued that third party negligence was a covered risk under the policy and was the efficient proximate cause of the loss. (See *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 412-413 [257 Cal.Rptr. 292, 770 P.2d 704].) He also asserted that USAA violated its duty of good faith and committed fraud when it denied the claim without advising him of the probable existence of third party negligence. Opsal claimed an additional fraud was committed when USAA attempted to assert the one-year contractual limitations period without reference to the federal Soldiers' and Sailors' Civil Relief Act (50 U.S.C. appen. § 525).

A jury found in favor of Opsal, awarding $52,000 which constituted the policy limits on the homeowners policy, $17,550 as attorneys' fees and $1.7 million in punitive damages. An express finding specified that fraud was the basis for the punitive damage award.

---

[2]For instance, the letter quoted the exclusion of damage caused by "[f]lood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not; . . ."

<hr>

DISCUSSION

On appeal, USAA's assault on the judgment proceeds along two broad avenues of attack. It first contends the Opsals' policy provides no coverage for their loss. It next argues that even if there is coverage, the evidence was insufficient to support the jury's conclusion that USAA acted in bad faith and committed fraud, the predicate findings which permitted the award of attorneys' fees and punitive damages.

## I.   Coverage Issues and Contract Damages

USAA contends as a matter of law that the HO-3 policy does not provide coverage for the Opsals' loss. It advances two distinct arguments in support of this position. First, it asserts that third party negligence is not a covered risk separate from the physical cause of the loss. Thus it argues that the "earth movement" exclusion applies to preclude coverage. In any event, it claims, the "latent defect" and "inherent vice" exclusions also apply to eliminate coverage.

A

In arguing that third party negligence is not a risk separate from the physical cause of the property loss, USAA places principal reliance on the Supreme Court's decision in *Garvey v. State Farm Fire & Casualty Co., supra,* 48 Cal.3d 395. The facts of *Garvey* are markedly similar to those of this case: Homeowners discovered cracking and other damage to floors and walls of their home, and sought recompense from their homeowners insurance carrier. The carrier denied coverage, citing a policy exclusion for loss due to earth movement. The homeowners claimed that a concurring cause of their loss was the negligent construction of their home. In a footnote, the *Garvey* court noted:

"A related issue involves whether courts should distinguish between types of negligence when determining whether a loss caused by negligence is covered under a similar policy. For example, if construction is undertaken on the insured premises for the sole purpose of protecting against the operation of a specifically excluded risk under the homeowner's policy, and that improvement subsequently fails to serve its purpose because it was negligently designed or constructed, the damage to the structure should arguably not be covered. On the other hand, ordinary negligence that contributes to property loss, but does not involve acts undertaken to protect against an excluded risk, may give rise to coverage under an all-risk policy. In other words, at some point, courts may want to distinguish between types of

negligence when analyzing coverage in a first party property insurance context. The issue, however, was not raised in the present case, and we do not address it here." (48 Cal.3d at pp. 408-409, fn. 7.)

*Garvey* went on to *hold* that the insured would be entitled to coverage if a jury determined that the efficient proximate cause of the property damage was third party negligence rather than earth movement. (48 Cal.3d at pp. 412-413.)

USAA argues that the alleged third party negligence in this case was the failure to adequately compact and prepare the lot prior to construction of the Opsals' home. By reference to the *Garvey* footnote, USAA asserts that this negligence related to efforts designed to protect against a specifically excluded risk, i.e., earth movement in the form of shifting and settling of the lot.

It is not without difficulty that USAA recognizes we do not write on a clean slate regarding this issue. In *Davis v. United Services Auto. Assn.* (1990) 223 Cal.App.3d 1322 [273 Cal.Rptr. 224], this court addressed USAA's identical argument and rejected it. We explained that "[w]hile there is a certain logical appeal to *Garvey*'s distinction between types of negligence and excluding coverage for negligence in preventing an excluded risk, the appeal is superficial." (*Id.* at p. 1330.) In reaching this conclusion, we acknowledged the distinction between natural or unpredictable earth movement—an excluded risk under the policy—and that sort of earth movement which would not occur but for the negligence of third parties, e.g., grading contractors. "The fact that USAA may have determined at the time of the HO-3 policy that insuring against earth movement without an additional premium was not economically feasible does not necessarily mean USAA also determined that insuring against the risk a contractor would improperly prepare the soils and foundation was not insurable without an additional premium. The risk a contractor will fail to adequately prepare the soils and foundations involves a wholly different set of factors than those involved in determining whether to insure against a naturally occurring, difficult to predict earth movement." (*Ibid.*) Our conclusion is only strengthened by our obligation to interpret the insurance contract consistent with the reasonable expectations of the insured. (E.g., *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 267 [54 Cal.Rptr. 104, 419 P.2d 168].) Viewed in the context of the other exclusions in the same paragraph (e.g., earthquake, volcanic eruption), the "earth movement" exclusion can be reasonably read to apply only to naturally occurring earth movement.

Even if we disagreed with *Davis*, however, we decline to allow USAA to reargue that case here. Respect for our colleagues and the orderly administration of justice—as well as the need of the trial bench, bar and litigants for

certainty in the development of the common law—dictate that there be a compelling reason before we overrule a decision of another panel of this court. Mere disagreement with the result or reasoning of an earlier decision does not, in our view, constitute a compelling reason. Here, USAA presented its concerns with *Davis* to the Supreme Court in a petition for review which the court denied in December 1990. In view of this court's commitment to stare decisis—particularly where it concerns opinions by other panels of this court—we do not believe the current case should serve as a forum for rearguing the merits of USAA's unsuccessful petition for review.

B

■ For the first time on appeal, USAA contends that the policy exclusions for "loss . . . by . . . inherent vice [or] latent defect" effectively preclude coverage for the third party negligence involved in this case. In support of this argument it cites *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 34 [27 Cal.Rptr. 689, 377 P.2d 889], *Tzung* v. *State Farm Fire and Cas. Co.* (9th Cir. 1989) 873 F.2d 1338 and *Acme Galvanizing Co.* v. *Fireman's Fund Ins. Co.* (1990) 221 Cal.App.3d 170, 178 [270 Cal.Rptr. 405].

Initially, we question whether the arcane terms "inherent vice" and "latent defect" are sufficient to apprise a reasonable homeowner that the insurer is excluding coverage for property damage caused by third party negligence which results in a defect or condition not discoverable except by post-damage expert investigation. (Cf. *Acme Galvanizing, supra,* 221 Cal.App.3d at p. 178 [so interpreting a *commercial* insurance policy].) We note in this regard that in 1986, USAA apparently issued a new form HO-84 policy which expressly excluded coverage for contractor negligence. (See *Davis* v. *United Service Auto. Assn., supra,* 223 Cal.App.3d at p. 1326.)

In any event, we decline to consider USAA's argument never made to the trial court and raised for the first time on appeal. The well-established general rule is that a party "may not for the first time on appeal change the theory upon which the case was tried." (*Curcio* v. *Svanevik* (1984) 155 Cal.App.3d 955, 960 [202 Cal.Rptr. 499].) USAA suggests we apply the exception allowing us to consider a new issue involving "only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence." (*Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633].) Here, however, there are potential factual issues which make the exception inapplicable. The soils report listed "[i]nadequate footing depth" as a possible contributing cause of the damage. It is not at all clear this constituted a "latent" defect in the residence. Even as to

the improperly compacted fill soil, there was no testimony as to what type of inspection would have revealed the "defect" and whether postdamage examination was required. Under these circumstances, USAA must be deemed to have waived any reliance on the "inherent vice" and "latent defect" exclusions.

## II. Bad Faith and Punitive Damages

In addition to contending the denial of coverage was improper—thus giving rise to damages for breach of contract—Opsal also argued he was entitled to compensatory tort and punitive damages because USAA acted in bad faith and committed fraud in conjunction with the denial of the claim. The jury agreed with Opsal on both counts, awarding compensatory bad faith damages attributable to Opsal's attorneys' fees (see *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796]) and punitive damages.

It is now clear under California law that an insurer's erroneous failure to pay benefits under a policy does not necessarily constitute bad faith entitling the insured to recover tort damages. "[T]he ultimate test of [bad faith] liability in the first party cases is whether the refusal to pay policy benefits was *unreasonable*." (*Austero* v. *National Cas. Co.* (1978) 84 Cal.App.3d 1, 32 [148 Cal.Rptr. 653], italics in original [overruled on other grounds in *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 824, fn. 7 (169 Cal.Rptr. 691, 620 P.2d 141)]; see also *Gourley* v. *State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 127 [279 Cal.Rptr. 307, 806 P.2d 1342].) In other words, "before an [insurer] can be found to have acted tortiously, i.e., in bad faith, in refusing to bestow policy benefits, it must have done so 'without proper cause.' " (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54-55 [221 Cal.Rptr. 171]; see *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910. 920 [148 Cal.Rptr. 389, 582 P.2d 980].)

Here, USAA denied coverage based on reasoning which presaged the Supreme Court's dicta in footnote 7 of *Garvey*. (*Garvey* v. *State Farm Fire & Casualty Co., supra*, 48 Cal.3d at pp. 408-409, fn. 7.) While this court has declined to follow that dicta in *Davis* v. *United Services Auto. Assn., supra*, (223 Cal.App.3d at p. 1330), we feel constrained to say the Supreme Court's footnote suggestion was not "unreasonable" and provided "proper cause" to support USAA's denial of coverage. As the Ninth Circuit Court of Appeals has explained in a similar context, bad faith liability cannot be imposed where there "exist[s] a genuine issue as to [the insurer's] liability

under California law." (*Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551, 557, disapproved on other grounds in *Garvey, supra,* 48 Cal.3d at pp. 410-411.) Clearly there exists "a genuine issue . . . under California law" until the meaning of *Garvey*'s footnote 7 is resolved.

■ We similarly reject Opsal's implicit contention that the jury's finding of fraud is itself sufficient to support the bad faith judgment.[3] Opsal attempts to defend that finding on two different theories. He first argues USAA committed fraud when it failed to advise him in the claim denial letter that third party negligence was a likely cause of the subsidence damage.[4] But USAA did provide him with a copy of the soil engineer's report which disclosed third party negligence. Without specifically mentioning third party negligence, the letter implicitly adopted the legal position—which we have previously determined to be reasonable—that third party negligence, even if it can be deemed the efficient proximate cause, does not automatically create a covered risk. While the initial letter denying coverage should be reasonably tailored to clearly and fairly apprise the insured of the basis for the insurer's decision, we do not believe the duty of good faith and fair dealing requires such a letter to brief the legal arguments which might defeat the insurer's position.[5]

■ Opsal also contends USAA committed fraud when it asserted the one-year contractual limitations period without mentioning the possible applicability of the Soldiers' and Sailors' Civil Relief Act. Again, however, USAA did not misrepresent or conceal any foundational facts. Opsal knew he was an active duty naval officer. The implied covenant does not require

---

[3]The jury instructions defined "fraud" for the purpose of assessing punitive damages as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

[4]In a related argument, Opsal contends USAA's bad faith is evidenced by the fact it refused to concede at trial that third party negligence caused the settling and cracking. Assuming this position was unreasonable and in bad faith, it cannot be deemed to have caused damage to Opsal in view of USAA's alternative and good faith argument that third party negligence here is not a legally separate cause of the loss.

[5]We have no quarrel with Opsal's suggestion that USAA's denial letter violated Insurance Code section 790.03, subdivision (h)(13) which requires "a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim . . . ." (See *ante,* p. 1201, fn. 2.) This court, however, has previously taken the position that in light of *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], section 790.03 does not create a private right of action in favor of first party insureds. (See *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833 [262 Cal.Rptr. 106].) In any event, the mere fact that USAA violated the Insurance Code by sending Opsal an incomprehensible denial letter will not support a bad faith judgment unless the letter in some way contributed to Opsal's damage. Here, all of Opsal's damage resulted from the denial of the claim itself—which we have concluded was in good faith—rather than from any lack of clarity in the denial letter.

an insurer to research and present the contrary legal arguments which could be made by the insured. Moreover, if the fundamental question is the reasonableness of the position asserted by the insurance carrier, here we cannot say that USAA's invocation of the one-year period, even if erroneous, was unreasonable. USAA took the position that the Soldiers' and Sailors' Civil Relief Act did not apply to *contractual* periods of limitation.[6] Opsal has cited a single out-of-state case (*Steinfield* v. *Massachusetts Bonding and Ins. Co.* (1921) 80 N.H. 39 [112 A. 800]) for the proposition that the Soldiers' and Sailors' Civil Relief Act applies to contractual time limitations. While we express no opinion on the persuasiveness of *Steinfield* or the ultimate resolution of the issue, such authority does not, in our view, automatically eliminate the "genuine issue . . . under California law" which exists as to the act's application to contractual periods of limitation. (See *Safeco Ins. Co. of America* v. *Guyton, supra,* 692 F.2d at p. 557.)

DISPOSITION

Insofar as it awards contract damages of $52,000 representing the insurance policy limits, the judgment is affirmed. To the extent it awards damages for breach of the implied covenant of good faith and fair dealing and punitive damages, the judgment is reversed. Because we have determined as a matter of law that the facts alleged by Opsal will not support a finding that the implied covenant was breached, the trial court is directed to enter judgment in favor of USAA as to that cause of action. The parties shall bear their own costs for this appeal.

Work, J., and Benke, J., concurred.

---

[6]USAA stipulated at trial it was not invoking the one-year contractual limitations period as a defense, perhaps because of the difficulty in proving that Opsal's discovery of the crack underneath the carpet constituted the "inception of the loss." (See *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 687 [274 Cal.Rptr. 387, 798 P.2d 1230].) It therefore does not contend on appeal that the underlying claim was barred, only that the assertion of the limitations period in the original denial letter will not support a finding of bad faith or fraud.