Mark A. **HUBKA,** Plaintiff,

v.

The **PAUL REVERE LIFE IN-
SURANCE CO., and Does
1–100,** Defendants.

No. 01–CV–0679–K(LAB).

United States District Court,
S.D. California.

Aug. 12, 2002.

Frank N. Darras, Shernoff, Bidart &
Darras, Claremont, CA, for plaintiff.

Robert K. Renner, Barger & Wolen,
Irvine, CA, for defendant.

## AMENDED ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

KEEP, District Judge.

On April 18, 2001, Defendant Paul Revere Life Insurance Co. ("Paul Revere") removed this case from the Superior Court of California. The complaint alleges that Paul Revere wrongfully terminated Plaintiff's disability benefits. On May 2, 2002, Paul Revere filed the instant motion for summary judgement, contending that under California's "genuine issue" doctrine Paul Revere is not liable for the tort claim for breach of the implied covenant of good-faith and fair dealing, and there is not clear and convincing evidence to support the award of punitive damages. Plaintiff filed an opposition and Paul Revere filed a reply; both sides proceed through counsel. The Court has diversity jurisdiction and California law applies.

### I. Background

The following facts are taken from the parties' papers and do not represent findings of fact by the Court.

Plaintiff Dr. Mark Hubka is a chiropractic doctor who formerly owned his own practice, Chiropractic Orthopedic Group of San Diego. In May 1986, Paul Revere issued a disability insurance policy to Plaintiff. The Policy provides for monthly disability benefits of $6000 in the event of Plaintiff's total disability, defined as "because of Injury or Sickness: 1. you are unable to perform the important duties of Your regular occupation ..." Ex. 1. The Policy also provides for residual disability benefits, defined as "because of Injury or Sickness: (a)(1) you are unable to perform one or more of the important duties of Your regular occupation ..."

On May 31, 1997, while attempting to push his car off of the freeway, Plaintiff

fell, suffering injuries to his head, neck, and lower back. Ex. B. On July 25, 1997, Plaintiff submitted a claim for total disability benefits, indicating that because of "weakness in left arm, I can't perform manipulations; also, numbness in left hand creates inability to palpate. Pain in left neck on extension or rotation is sharp. Pain in low back and left leg make bending difficult ... Pushing/pulling causes pain in both neck and low back."

Following the accident, Plaintiff was treated by his fellow chiropractor Dr. Toro. Dr. Toro certified Plaintiff as totally disabled from performing as a chiropractor, indicating physical limitations that included "Neck: No lifting, no neck extension, no push/pulling" and "Low back: No bending, no lifting over 10–15 lbs., no prolonged sitting over 45 min." Ex. B. Dr. Wang, a neurologist, issued a report indicating that "I believe Mr. Mark Hubka is totally and permanently disabled for his previous profession as a chiropractor." Ex. B.

On October 7, 1997, Paul Revere commenced payment of total disability payments to Plaintiff. Even as it commenced disability payments, Paul Revere also began investigating Plaintiff's claim, including videotape surveillance. For six days between September 25 and October 11, 1997, Paul Revere conducted surveillance of Plaintiff to document his functionality. Paul Revere's private investigators observed Plaintiff "moving his head side to side", "tilting his head while talking on a cellular phone", "walking forward with his head twisted over his right shoulder speaking with his wife", "moving his head side to side to speak with [others]" and "look[ing] down at his pager at his waist and also [keeping] his head tilted while talking on his cellular phone." Ex. 9. Throughout this surveillance, "at no time did Hubka show signs of discomfort or restriction." Ex. 9. On October 11, 1997,

investigators videotaped Plaintiff as he coached his son's flag football team for approximately two hours and forty minutes:

> During this time Hubka was observed conducting the following activities: on several occasions leaning over, bending at the waist to put things on the ground or pick them up then standing upright in a fluid manner; squatting; .... At no time did Hubka show signs of discomfort in his back or neck. His movements were fluid, unrestricted, and he displayed a full range of motion.

Ex. 9.

Paul Revere's investigators conducted videotape surveillance again for three days in 1999. Plaintiff was videotaped "pushing a full, large size garbage container to the front of the residence" and "carrying two garbage bags" to the same container. Plaintiff bended "forward from the waist to retrieve a garbage bag from the ground before placing it in a garbage can." Plaintiff was also observed getting in and out of his car "in a fluid, unrestricted manner and without bracing". Ex. 16.

Following the second videotape surveillance in 1999, Paul Revere had an independent medical examination ("IME") of Plaintiff by Dr. Jonathan Schleimer. Dr. Schleimer conducted both a hands-on examination of Plaintiff and a review of numerous records. Ex. 17. The IME notes that the predominant symptoms are neck pain and associated headaches, and Plaintiff has "some degenerative disc disease with disc bulging and endplate spur formation at C5–6." Id. at 8. Dr. Schleimer watched the surveillance tapes and stated that Plaintiff "appears to be in no acute distress, throughout, though no heavy physical exertion or other activities were observed." In response to specific questions from Paul Revere about the videotapes, Dr. Schleimer came to several

conclusions regarding Plaintiff's physical condition, including:

(i) "Although the videotape shows the patient's ability to walk and converse with no apparent signs of discomfort there is no evidence of him doing any repetitive or physical activities that I could strongly put my finger on here."

(ii) "The surveillance videotape would suggest that clearly, at least at times, this patient has less discomfort than otherwise observed by this examiner."

(iii) "Although the surveillance videotapes would suggest clearly, again, that this patient has no evident restrictions the focus of symptoms is in his cervical spine. I, therefore, cannot describe inconsistencies with his reported symptoms based upon these surveillance tapes or my physical examination."

*Id.* at 8–9.

The IME provided an assessment of Plaintiff's disability, which is worth quoting in its entirety:

In my opinion, based upon his cervical spine condition, this patient would be precluded from heavy work. I would estimate that he has lost approximately one-half of his capacity for repeated bending, stooping, lifting, pushing or pulling. It is possible that these restrictions would preclude him from performing his regular duties as a chiropractic physician. I believe that he could perform physical examinations, Qualified Medical Examinations and Independent Medical Examinations. I am not particularly familiar with the regular work duties of a primary treating chiropractor which could be reviewed by a chiropractic treating physician. [Plaintiff] describes that this often requires forceful bending, stooping and pushing. I would consider review of this patient's job restrictions based upon an expert chiropractic treating physician to see if he can, in fact, practice in a modified position within the restrictions I have assessed.

*Id.* at 9.

Paul Revere subsequently conducted an in-house review of Plaintiff's disability claim. Dr. John Bianchi, a board-certified orthopedist, is employed by Paul Revere and conducts medical reviews for the insurer. He reviewed Plaintiff's medical records and the IME report and stated that the "medical records and the IME do not objectively support a significant impairment" and that the conclusions in the reports are "primarily subjectively based", i.e. based upon the subjective complaints of Plaintiff and not upon objective indications of injury in the x-ray films and other diagnostics. Dr. Bianchi concluded that while any impairment based on the neck complaints may interfere with the physically demanding duties of being a chiropractor, he felt that Plaintiff was "partially—not totally disabled" and that he should be able to return to work on at least a residual basis. Ex. 18. On the basis of the review by Dr. Bianchi, Paul Revere notified Plaintiff on April 28, 2000 that total disability benefits were to be terminated, effective June 1, 2000.

## II. Discussion

### A. Legal Standards

#### 1. Summary Judgement

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The movant has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden then shifts to the nonmovant to show that summary judgment is not appropriate. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To make such a showing, the nonmovant must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *See id.* In considering this motion, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could **reasonably find** for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505 (emphasis added).

### 2. Genuine Issue Doctrine

■ This motion for summary judgement turns on the "genuine issue" doctrine. Wrongfully failing to pay insurance benefits is a breach of contract for which punitive damages are normally unavailable. However, in California the covenant of good faith and fair dealing is implied in every contract, the breach of which is a tort. *Amadeo v. Principal Mutual Life Ins. Co.,* 290 F.3d 1152, 1161 (9th Cir. 2002); *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,* 90 Cal. App.4th 335, 345–46, 108 Cal.Rptr.2d 776 (2001). Thus, for Plaintiff to be eligible for punitive damages, he must sustain a claim that Paul Revere acted in bad faith in terminating his disability payments. Under California's genuine issue doctrine, the insurer's denial of coverage must have been unreasonable or without proper cause, i.e. there was no genuine issue as to whether coverage was due. *Amadeo,* 290 F.3d at 1161. "The mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir.2001) (citation omitted).

The Ninth Circuit has concisely set forth how the genuine issue doctrine works in the context of a motion for summary judgement:

> The genuine issue rule ... allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law.... On the other hand, an insurer is not entitled to summary judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

*Amadeo,* 290 F.3d at 1161–62 (citations omitted).

Thus, the task of the Court is to examine the record to determine if there is sufficient evidence from which a jury could conclude that Paul Revere denied the claim unreasonably and in bad faith. In cases such as this one where the dispute is a factual one (as opposed to one over the meaning of language in the policy), the genuine issue doctrine "should be applied on a case-by-case basis." *Guebara,* 237 F.3d at 994. In sum, "[w]hile the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay,* 90 Cal. App.4th at 346, 108 Cal.Rptr.2d 776.

### B. Analysis

■ The three main bases on which Paul Revere contends that its decision to deny benefits was reasonable are the Independent Medical Examination ("IME") by Dr. Schleimer, the surveillance reports and videotapes, and the medical review by

their in-house expert, Dr. Bianchi. "While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay*, 90 Cal.App.4th at 346, 108 Cal.Rptr.2d 776. Thus, to enter summary judgement in favor of Paul Revere, the Court must find that the only reasonable inference from the evidence is that Paul Revere terminated Plaintiff's disability benefits in good faith. In other words, if a reasonable juror could find that Paul Revere was unreasonable in terminating disability benefits, summary judgement is inappropriate. For the reasons below, the Court finds that a reasonable juror could find that Paul Revere acted unreasonably, and the Court accordingly **DENIES** Paul Revere's motion for summary judgement on the bad faith claim.

Paul Revere places much weight on the results of the videotape surveillance. While the investigators' summaries of the videotapes certainly give rise to an inference that Plaintiff's injuries may not be as severe as he contended, on this summary judgement motion the significance of the videotapes is best evaluated through the conclusions of trained medical experts.

Dr. Schleimer conducted both a hands-on examination of Plaintiff and a review of numerous records. Ex. 17. He stated that "[a]lthough the surveillance videotapes would suggest clearly, again, that this patient has no evident restrictions the focus of symptoms is in his cervical spine. *I, therefore, cannot describe inconsistencies with his reported symptoms based upon these surveillance tapes* or my physical examination." *Id.* at 8–9 (emphasis added). The IME provided the following assessment of Plaintiff's disability:

> In my opinion, based upon his cervical spine condition, this patient would be precluded from heavy work. I would estimate that he has lost approximately one-half of his capacity for repeated bending, stooping, lifting, pushing or pulling. It is possible that these restrictions would preclude him from performing his regular duties as a chiropractic physician ... I am not particularly familiar with the regular work duties of a primary treating chiropractor which could be reviewed by a chiropractic treating physician. [Plaintiff] describes that this often requires forceful bending, stooping and pushing. *I would consider review of this patient's job restrictions based upon an expert chiropractic treating physician to see if he can, in fact, practice in a modified position within the restrictions I have assessed.*

*Id.* at 9 (emphasis added).

The IME clearly does not regard the videotapes as dispositive of Plaintiff's disability. Dr. Schleimer specifically recommends that an expert chiropractor evaluate whether Plaintiff can return to work. Paul Revere never referred the matter to an expert chiropractor. The evaluation of Dr. Toro, the sole chiropractor to examine and treat Plaintiff, stated that Plaintiff was unable to return to work treating patients. Moreover, Dr. Wang, the treating neurologist, reported that "I believe Mr. Mark Hubka is totally and permanently disabled for his previous profession as a chiropractor."

The only expert medical opinion that Plaintiff was not totally disabled is that of Dr. Bianchi. Dr. Bianchi only conducted a review of Plaintiff's medical records; he has not himself physically examined Plaintiff. Dr. Bianchi has never personally been treated by a chiropractor and he is unfamiliar with the physical requirements involved in treating patients as a chiro-

practor. Ex. H. Dr. Bianchi is employed by Paul Revere.

To sum up the evidence: (i) the two doctors who are treating Plaintiff maintain that he is permanently and totally disabled; (ii) the one doctor who conducted the IME concluded that Plaintiff had lost 50% of his capacity for heavy work, and recommended an examination by a chiropractor because he was not familiar with the physical demands upon a chiropractor; and (iii) the only medical expert to conclude that Plaintiff is not totally disabled is an in-house medical reviewer who has not examined Plaintiff and who is admittedly not familiar with the physical demands upon a chiropractor. Based upon the report of Dr. Bianchi and the videotapes, a reasonable juror could conclude that Paul Revere was reasonable in terminating benefits. However, a reasonable juror could also conclude that Paul Revere was unreasonable in terminating benefits, because: (i) the company never followed the recommendation of the IME to have an independent chiropractic exam; (ii) the only treating chiropractor determined that Plaintiff was totally disabled; and (iii) Dr. Bianchi made his contrary findings with no examination of Plaintiff and no knowledge of the physical demands of the job on a chiropractor. In cases where courts have found summary judgement for defendant insurers appropriate based on the genuine issue doctrine, there have been *multiple independent experts* on which the decision is based. *See, e.g., Guebara,* 237 F.3d at 995 (summary judgement for defendant insurer where "[a]s in *Phelps* and *Fraley,* in this case Allstate relied on three [independent] expert opinions").

## C. Punitive Damages

Paul Revere also contends that, even assuming *arguendo* that Plaintiff has met his burden on the summary judgement motion to sustain his bad faith claim, Plaintiff has not produced any evidence to support his prayer for punitive damages, relying upon *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 1286–1288, 31 Cal.Rptr.2d 433 (1994). *Tomaselli* reviews California law on punitive damages in the context of insurance suits, noting that, *inter alia,* punitive damages must be proved by clear and convincing evidence and punitives are appropriate where an insurer acts with "a conscious disregard of the plaintiff's rights". *Id.* at 1287, 31 Cal. Rptr.2d 433 (citations omitted). Paul Revere contends that Plaintiff has not provided any evidence that meets the clear and convincing standard of proof, and that Plaintiff has not shown that there has been a continuous policy of nonpayment of claims or other outrageous behavior such that punitive damages are appropriate.

Where, as here, the clear and convincing standard would apply at trial, to defeat a summary judgement motion Plaintiff must produce evidence such that a reasonable juror could find punitive damages appropriate by clear and convincing evidence. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. As noted above, there is evidence that a reasonable juror could conclude that Paul Revere used Dr. Bianchi's opinion as a pretext to end disability payments, contrary to the weight of the medical evidence and without an expert chiropractic opinion as advised by the IME. Such conduct could reasonably be construed as a "conscious disregard of the plaintiff's rights" (*Tomaselli,* 25 Cal.App.4th at 1287, 31 Cal. Rptr.2d 433). The Court again notes that no independent medical expert concluded that Plaintiff was not disabled, two medical experts did conclude that Plaintiff was completely disabled, and Paul Revere did not follow the recommendation of the independent expert chosen by them to have another exam by an independent chiropractor. Based on the analysis of the bad faith claim above, the Court finds that a reasonable juror could conclude by clear

and convincing evidence that Paul Revere consciously disregarded Plaintiff's rights under the insurance policy. The Court accordingly **DENIES** Paul Revere's summary judgement motion as to punitive damages.

### III. Conclusion

The Court **DENIES** Paul Revere's motion for summary judgement.

**IT IS SO ORDERED.**