**LG INFOCOMM U.S.A., INC., Plaintiff,**

v.

**EULER AMERICAN CREDIT INDEMNITY COMPANY,
Defendant.**

**No. 03CV0632 DMS (BLM).**

United States District Court,
S.D. California.

Jan. 12, 2005.

---

Kenneth S. Klein, Foley and Lardner, San Diego, CA, for Plaintiff.

Devin A. McRae, Leboeuf Lamb, Greene and MacRae, Los Angeles, CA, for Defendant.

## ORDER (1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SABRAW, District Judge.

Plaintiff LG Infocomm U.S.A., Inc. brings this civil action pursuant to 28 U.S.C. § 1332(a)(1) against its insurer, Defendant Euler American Credit Indemnity Company. Plaintiff alleges three counts in its Complaint: (1) Breach of insurance contract, (2) breach of the implied covenant of good faith and fair dealing ("bad faith"), and (3) declaratory relief. The parties have filed cross-motions for partial summary judgment on the issues of bad faith, punitive damages and attorney fees. After careful consideration, the Court grants Defendant's motion for partial summary judgment on Plaintiff's bad faith claim.

## I.

### PROCEDURAL BACKGROUND

On April 1, 2003, Plaintiff filed its complaint in this case. On June 24, 2004, Defendant filed its present motion for partial summary judgment. Plaintiff thereafter filed its motion for partial summary judgment on July 16, 2004. The parties filed their respective oppositions to the motions on July 30, 2004, and their respective reply briefs on August 6, 2004. Or November 5, 2004, this Court heard oral argument on the parties' motions. Andrew Serwin, Esq. appeared on behalf of Plaintiff, and Jared Katz, Esq. appeared on behalf of Defendant.

## II.

### FACTUAL BACKGROUND

Plaintiff purchased a credit insurance policy from Defendant. (*See* Pl.'s Resp. to Def.'s Statement of Facts and Separate Statement of Undisputed Facts at 2.) That policy provides coverage "against credit losses due to the non-payment of amounts due from a covered Buyer for Shipments of Covered Products made by [the insured] during the Policy Period on terms no longer than the Maximum Terms of Sale and which were invoiced in U.S. or Canadian dollars." (Compl., Ex. 1 at 12.) The policy provides: "A final loss payment will be made within the earlier of sixty (60) days after the date" the claim is filed or "sixty (60) days after the expiration of the Maximum Claim Filing Period." (*Id.* at 16.) The policy also contains a choice of law provision, and is to be governed by and construed according to California law. (*Id.* at 21.)

During the policy period, Plaintiff made three shipments of cell phones to MCI

invoicing $1,085,000. (Pl.'s Resp. to Def.'s Statement of Facts and Separate Statement of Undisputed Facts at 2.) Cell phones fall within the policy's definition of "Covered Products," and MCI is a "Named Buyer" under the policy. (*Id.*)

Before paying the invoice, MCI filed a voluntary petition for bankruptcy protection pursuant to Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. (*Id.*) The following day, July 22, 2002, Plaintiff completed a Notification of Claim under the policy for $1,652,000, and submitted it to Defendant. (*Id.*) On July 26, 2002, Defendant acknowledged receipt of Plaintiff's claim, and estimated the covered portion at $976,500. (*Id.*)

On October 1, 2002, Defendant informed Plaintiff it had filed a "Proof of Claim" on Plaintiff's behalf in MCI's bankruptcy proceedings. (*Id.*) The claim form was received in the bankruptcy court on October 4, 2002. (*Id.*)

On October 8, 2002, Plaintiff wrote to Defendant requesting that it promptly pay the covered amount of the policy of $976,500. (*Id.*) In a letter dated October 16, 2002, Defendant responded to Plaintiff's request, stating Plaintiff's claim "was not allowed in claim settlement at this time as schedules have not been released by the debtor [MCI]." (*Id.*) Defendant clarified its position by citing to an exclusion in the policy, which provides:

> The following credit losses are not covered under this Policy unless specifically included by Endorsement:
>
> ... *Losses due to Insolvency where the amounts owed by the Buyer have not been allowed or scheduled by a Buyer or allowed pursuant to a court order in bankruptcy* or relief of debt proceedings. (Emphasis added).

Relying on this exclusion, Defendant stated that the potential losses due Plain-

tiff would be determined once the schedules were released by debtor MCI. (*Id.*) On November 4, 2002 MCI filed certain of its debt schedules, but did not schedule any amount owing to Plaintiff (*Id.*) Nearly one month later, on December 2, 2002, Plaintiff sent another letter to Defendant, again demanding payment under the policy. (*Id.*) Defendant responded that Plaintiff's claim was not payable at that time because MCI had neither allowed nor scheduled its debt to Plaintiff. (*Id.* at 4.)

On April 1, 2003, Plaintiff filed the present action. In September 2003, Plaintiff filed a motion for partial summary judgment on its breach of contract claim. Before the Court issued a ruling on that motion, MCI informed Defendant it was not going to object to Plaintiff's claim as filed. (*Id.* at 5.) The next day, Defendant issued a check to Plaintiff in the amount of $954,000. (*Id.*) On March 16, 2004, this Court issued its ruling granting Plaintiff's motion for partial summary judgment on the breach of contract claim. Defendant thereafter paid Plaintiff prejudgment interest in the amount of $112,389.05. (*Id.*)

## III.

## MOTION FOR ADDITIONAL DISCOVERY

■ As an initial matter, Plaintiff argues the Court should deny Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f). This Rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or

discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). Under Rule 56(f), "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac–Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir.2001) (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920 (9th Cir.1996)). *See also Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir.1986) (stating burden is on nonmoving party to show what material facts would be discovered that would preclude summary judgment). To meet this burden, "the party opposing summary judgment must file an affidavit specifying the facts that would be developed through further discovery." *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 996 (9th Cir.2001). *See also California v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998) (explaining that Rule 56(f) "requires litigants to submit affidavits setting forth the particular facts expected from further discovery."); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523–24 (9th Cir.1989) (citing *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986)) (same).

Here, Plaintiff relies on the Affidavit of William F. Tarantino in support of its Rule 56(f) request. (*See* Aff. Regarding Additional Disc. in Opp'n to Def.'s Mot. for Summ. J. ("Tarantino Affidavit.")) Mr. Tarantino declares "that additional evidence regarding Euler's bad faith and malicious, fraudulent, and unreasonable handling of LG's claim will come to light through the depositions of Gary Shapiro, General Counsel of Euler, and Euler's Person Most Knowledgeable regarding LG's claim, as well as the related document productions." (*Id.* at 1.)

Although additional evidence may come to light through these depositions and document productions, Mr. Tarantino fails to state there is insufficient evidence to rule on Defendant's motion at the present time. *See Mackey*, 867 F.2d at 523–24 (citing Fed.R.Civ.P. 56(e), (f)) (stating "[a] Rule 56(f) motion must show how additional discovery would preclude summary judgment *and why a party cannot immediately provide 'specific facts demonstrating a genuine issue of material fact.'*") (emphasis added). Indeed, Mr. Tarantino states the anticipated depositions and documents "will produce *further* questions of material fact suitable for trial[,]" (Tarantino Aff. at 2) (emphasis added), not that there is insufficient evidence to rule on Defendant's motion at the present time.

In addition, by filing its own motion for partial summary judgment on the bad faith claim, Plaintiff argues there is sufficient undisputed evidence for this Court to enter judgment in its favor. If there is sufficient evidence to decide Plaintiff's motion, there is sufficient evidence to decide Defendant's motion as well. Accordingly, the Court denies Plaintiff's request that the Court deny Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f).

## IV.

## MOTIONS FOR SUMMARY JUDGMENT

The parties move for summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing and Plaintiff's request for punitive damages. Defendant also moves for summary judgment on Plaintiff's request for attorneys' fees pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796 (1985).

### A. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to

judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ "[T]he covenant of good faith and fair dealing is implied in every contract, the breach of which is a tort." *Hubka v. Paul Revere Life Ins. Co.*, 215 F.Supp.2d 1089, 1092 (S.D.Cal.2002) (citations omitted). The covenant "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefit of the agreement." *Hanson v. Prudential Ins. Co.*, 783 F.2d 762, 766 (9th Cir.1985) (citations omitted). It "has 'particular application' to insurers because they are 'invested with a discretionary power affecting the rights of another,' and the insurance business is 'affected with a public interest and offers services of a quasi-public nature[.]'" *Amadeo v. Principal Mutual Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir.2002) (citations omitted).

■ "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). *See also Adams v. Allstate Ins. Co.*, 187 F.Supp.2d 1207, 1214 (C.D.Cal. 2002) (same). This Court decided the first element when it granted Plaintiff's motion for summary judgment on the breach of contract claim Thus, the only remaining issue on Plaintiff's bad faith claim is whether Defendant's withholding of benefits was reasonable. *See Guebara*, 237 F.3d at 992.

■ Although the issue of reasonableness "is ordinarily a question of fact[,]" *Highlands Ins. Co. v. Continental Casualty Co.*, 64 F.3d 514, 517 (9th Cir.1995) (citing *Walbrook Ins. v. Liberty Mut. Ins.*, 5 Cal.App.4th 1445, 1454, 7 Cal.Rptr.2d 513 (1992)), Defendant argues it is entitled to judgment on this issue under the genuine issue, or genuine dispute as to coverage, doctrine. This doctrine allows a court to "conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Guebara*, 237 F.3d at 992 (quoting *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir.1994)). Accordingly, this doc-

trine allows a court to treat reasonableness as a question of law if there is a genuine dispute as to coverage. "Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage." *Feldman v. Allstate Insurance Company* 322 F.3d 660, 669 (9th Cir.), *cert. denied,* 540 U.S. 875, 124 S.Ct. 222, 157 L.Ed.2d 137 (2003) (citation omitted).

■■■ Moreover, while an erroneous denial of a claim may constitute a breach of contract, it does not by itself support tort liability. "The mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute at to the insurer's liability under California law does not expose the insurer to bad faith liability." *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 1280–81, 31 Cal.Rptr.2d 433 (1994).

Although the genuine dispute doctrine enjoys broad application in the Ninth Circuit, and applies even to cases involving *factual* disputes over coverage, *Guebara,* 237 F.3d at 992–94, the majority of cases in California "finding a genuine dispute over an insurer's coverage liability have involved *legal* rather than factual disputes[.]" *Chateau Chamberay Home-owners Ass'n v. Associated Int'l Ins. Co.,* 90 Cal.App.4th 335, 348, 108 Cal.Rptr.2d 776 (2001). The *Chateau Chamberay* court defined a legal dispute as "a coverage dispute involving the proper construction and application of policy language[.]" *Id.* at 785 n. 7.

■■■ In this case, Plaintiff in its opposition brief attempts to cast its bad faith claim as one involving factual disputes rather than one involving a legal dispute about the policy language. However, the dispute in this case squarely presents a question of policy interpretation: what does the term "allowed" mean in the con-

text of the policy's exclusion? Does it mean the amounts owed by the Buyer, in this case MCI, are "automatically" deemed allowed upon the filing of a claim in the bankruptcy court, or does it mean that such claims are deemed allowed only in the absence of a timely objection (after a designated period of time in which to object has elapsed)? This dispute, therefore, raises a question of law that is particularly well-suited for disposition under the "genuine dispute as to coverage" doctrine.

Notably, the majority of courts in the Ninth Circuit that have addressed whether an insurer is entitled to summary judgment on a bad faith claim based on a genuine dispute about policy language have ruled in favor of the insurer. *See Am. Cas. Co. of Reading, Penn. v. Krieger,* 181 F.3d 1113, 1123 (9th Cir.1999) (affirming judgment in favor of insurer because insured failed to show insurer's construction of policy was unreasonable); *Lunsford,* 18 F.3d at 656 (finding insurer entitled to judgment on bad faith claim because refusal to defend based on reasonable construction of policy); *Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.,* 971 F.2d 272, 283 (9th Cir. 1992) (insurer's interpretation of policy not unreasonable in face of genuine issue concerning liability); *Franceschi v. Am. Motorists Ins. Co.,* 852 F.2d 1217, 1220 (9th Cir.1988) (insurer's interpretation of policy term not unreasonable in light of genuinely arguable issue whether term was ambiguous); *Hanson,* 783 F.2d at 766 (finding insurer's conduct did not rise to level of bad faith because insurer's interpretation of policy was not unreasonable); *Safeco Ins. Co. of Am. v. Guyton,* 692 F.2d 551, 557 (9th Cir.1982) (affirming judgment in favor of insurer because there was a genuine issue as to insurer's liability under California law).

The only case cited by Plaintiff in which the court ruled in favor of the insured is

*Amadeo. See* 290 F.3d 1152. There, the plaintiff filed a claim for disability benefits under her insurance policy. *Id.* at 1157. The policy provided coverage due to injury or sickness if the insured was " 'unable to perform the substantial and material duties of [her] *regular occupation* in which [she was] engaged just prior to the disability.' " *Id.* (emphasis added). Despite plaintiff's twenty-year employment history in the securities industry, the insurer interpreted the plaintiff's "regular occupation" to be "unemployment" since plaintiff was unemployed just prior to her disability. *Id.* at 1162. Because plaintiff could continue her daily activities as an unemployed person, the insurer reasoned she could perform the "substantial duties" of unemployment and denied her claim. *Id.* (insurer reasoned, if plaintiff "became disabled during a period of unemployment, then the word 'occupation' meant 'unemployment.' ").

On appeal, the Ninth Circuit addressed the propriety of granting summary judgment to the insurer based on the genuine issue rule. The court found the insurer's interpretation of "regular occupation" was arbitrary, because (1) there were "no guidelines for establishing when [the insurer] would consider someone's regular occupation as unemployment and that the application of the policy's language in the context of an unemployed insured was 'subjective[,]' " and (2) there was no law supporting the insurer's interpretation. *Id.* at 1163.

In contrast to *Amadeo,* Defendant's interpretation of the policy language at issue is supported by case law and is therefore not arbitrary. That law is found in *Wechsler v. Hunt Health Systems, Ltd.,* 1999 WL 397751(S.D.N.Y. June 16, 1999).

In *Wechsler,* the court specifically addressed when a claim is "deemed allowed" under Section 502(a) of Title 11 of the Bankruptcy Code.[1] There, the creditors argued their proof of claim was "automatically 'allowed' because no objection [was] currently pending against it[.]" 1999 WL 397751, at *7. The court began its analysis of the creditors' argument by providing an overview of bankruptcy procedure with respect to proofs of claim:

A proof of claim, which may be filed by any putative creditor . . ., is "a written statement setting forth a creditor's claim" against the debtor's estate. Filing of the proof of claim "ensure[s] that all those involved in the [bankruptcy] proceeding will be made aware of the claims against the . . . estate".

Absent timely objection, the proof of claim is automatically deemed "allowed", thereby entitling the claimant to participate in distribution of the debtor's assets, as appropriate. By contrast, if an objection to the proof of claim is timely filed, a "contested matter" is initiated, often in the form of an adversary proceeding. In that event, the proof of claim will not be deemed "allowed" until the bankruptcy court determines the proper amount of the claim.

1999 WL 397751, at *8 (internal citations omitted).

With this background in mind, the *Wechsler* court rejected the creditors' contention that their proof of claim was "automatically allowed" upon filing:

[Creditors'] argument fails because the proof of claim has not been automatically allowed. As noted, automatic allowance occurs only if there is no *"timely* objection". *Maxwell Communication Corp. v. Societe Generale (In re Max-*

---

1. Section 502(a) states: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a).

*well Communication Corp.)*, 93 F.3d 1036, 1046 (2d Cir.1996)(original emphasis). *Thus, the mere absence of an objection at any particular moment does not mean the claim has been "allowed"; automatic allowance can occur only upon expiration of the deadline, if any, for objecting.*

*Id.* (emphasis added).

Because neither the bankruptcy court nor the plan of reorganization had imposed a deadline for filing objections to proofs of claim, the court in *Wechsler* held the time in which to object had not yet expired. *Id.* at *9. Thus, the creditors' claim was not deemed to be automatically allowed because the period for filing objections had not passed. *Id.*

Plaintiff asserts *Wechsler* is insufficient to raise a genuine dispute in this case because it is an unpublished decision from outside the Ninth Circuit, and because it discusses bankruptcy law, not California law. At the time Defendant made its coverage decision, however, it was faced with a complete lack of legal authority interpreting its policy language. Therefore, it could fairly look to cases interpreting similar language in the Bankruptcy Code, specifically *Wechsler*.[2]

In addition, while Plaintiff discounts *Wechsler's* relevance due to its bankruptcy context, the cases Plaintiff relies on to support its interpretation of the policy are also bankruptcy cases. The exclusion at issue in this case specifically refers to "Insolvency," and thus the bankruptcy-related cases are directly relevant to the interpretation of the policy in this case. Accordingly, *Wechsler's* discussion of the term "deemed allowed" under Section 502 is relevant to the analysis of the term "allowed," as used in the subject policy and in the context of this case.

*Wechsler* also is significant (under the genuine dispute doctrine) because it interprets the term "deemed allowed" in the context of a New York bankruptcy filing, the same forum controlling MCI's bankruptcy proceedings. And while the policy in question contains a California choice of law provision, that provision is of limited significance for two reasons: (1) there is no California case directly on point (that is, there is no case—California or Ninth Circuit—that interprets either the exclusion in question or holds that a proof of claim is automatically deemed allowed upon filing of the claim);[3] and (2) the exclusion and

---

**2.** While *Wechsler* is an unpublished opinion, such opinions still may provide an insurer (or an insured) with valuable insight as to how policy language might reasonably be interpreted by a court. With Westlaw, Lexis, and other computer-based programs, unpublished opinions on virtually every aspect of law are ubiquitous and easily accessible. These types of opinions, while not citable in a court of law for precedential value, do serve legitimate purposes in a variety of other contexts, including the present circumstance. The parties to an insurance contract may fairly look to such cases for a reasoned analysis of specific policy language by a court, or, as in this case, for a reasoned analysis of a statute that uses the same language as the policy. Such research (and reliance on unpublished opin-

ions) are particularly reasonable when no directly applicable, published authority exists.

**3.** Plaintiff argues Defendant acted unreasonably because it failed to consider "Ninth Circuit authorities that directly address when a claim is deemed allowed", citing *United States v. Towers (In re Pacific Atlantic Trading Co.)*, 33 F.3d 1064 (9th Cir.1994). (*See* Opp'n to Def.'s Mot. for Summ. J. at p. 12, lines 14–15.) *In re Pacific Atlantic Trading*, however, does not address—let alone directly address—this issue. There, the court addressed whether a creditor's claim would be "allowed" (or considered) after the creditor failed to file its proof of claim within the time limits set forth by Bankruptcy Rule of Procedure 3002(c). Thus, the court analyzed whether a creditor's claim would be considered or recognized at

the circumstances of this case necessarily involve interpretation of policy language in the context of MCI's bankruptcy filing and thus, federal bankruptcy law (as opposed to California law) plays a prominent role in determining the meaning of the policy.

With the benefit of case law that supports Defendant's interpretation of the policy, this case is distinguishable from *Amadeo* and more like *Opsal v. United Services Auto. Ass'n*, 2 Cal.App.4th 1197, 10 Cal. Rptr.2d 352 (1991). In *Opsal*, following a jury verdict awarding the insured compensatory and punitive damages for breach of contract and bad faith, the insurer argued among other things it was entitled to judgment notwithstanding the verdict on the bad faith claim pursuant to the genuine dispute doctrine. The insurer argued its coverage position was reasonable as a matter of law because its position was later adopted in dicta by the California Supreme Court, citing *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 408–09, n. 7, 257 Cal.Rptr. 292, 770 P.2d 704 (1989). *Id.* at 1205–06, 10 Cal.Rptr.2d 352. Although the California Court of Appeal subsequently decided not to follow that dicta, the *Opsal* court nevertheless held that *Garvey* raised a genuine issue as to the insurer's liability. *Id.* The court held:

Here, [the insurer] denied coverage based on reasoning which presaged the Supreme Court's dicta in footnote 7 of *Garvey*. While this court has declined to follow that dicta ..., we feel constrained to say the Supreme Court's footnote suggestion was not 'unreasonable' and provided 'proper cause' to support [the insurer's] denial of coverage. As the Ninth Circuit Court of Appeals has explained in a similar context, bad faith liability cannot be imposed where there 'exist[s] a genuine issue as to [the insurer's] liability under California law.' Clearly, there exists 'a genuine issue ... under California law' until the meaning of *Garvey's* footnote 7 is resolved.

2 Cal.App.4th at 1205–06, 10 Cal.Rptr.2d 352 (internal citations omitted).

In this case, the facts are even more compelling than in *Opsal*. There, the insurer did not have any legal authority to support its interpretation of the policy at the time it made the coverage decision. Its coverage decision "presaged" footnote 7 in *Garvey*. Here, however, Defendant had case law supporting its interpretation of the policy at the time of its coverage decision. Even more than *Opsal*, this fact

---

all by the bankruptcy court where the creditor "failed to file a timely proof of claim as required by [Rule 3002(c)]." 33 F.3d at 1065. The court did not address in any way whether a creditor's *timely* filed proof of claim is automatically deemed allowed upon filing.

Plaintiff also cites *Shook v. CBIC (In re Shook)*, 278 B.R. 815, 821 (9th Cir.BAP (Nev.) 2002), in support of its position that its claim was automatically deemed allowed upon filing. While *In re Shook* contains language that initially appears helpful ("absent a written objection from a party in interest, a claim is 'deemed allowed' upon the filing of a timely proof of claim")(*id.* at 821), its holding ultimately does not assist Plaintiff. The court in *In re Shook* qualified the foregoing language by stating that a "deemed allowed" claim is only *"prima facie* evidence of the validity and

amount of the creditor's claim", and that if an objection is filed by the debtor, "the proof of claim will not be allowed until the bankruptcy court determines the proper amount of the claim." *Id.* at 821–22. Finally, the court held that with respect to the claim it was analyzing, that even though the debtors "did not object to the claim," the creditor's proof of claim was deemed to be an allowed claim *"at the time of plan confirmation[.]"* *Id.* at 822 (emphasis added). Plan confirmation occurred well after the creditor's claim had been filed. Thus, the creditor's claim was not deemed allowed *upon filing*, but rather at the time of plan confirmation. Implicit in the court's reasoning is a recognition of the "claims objection process" and the affect of that process on when a claim is deemed allowed. *See id.*

raises a genuine dispute about coverage in this case.

Further, Plaintiff has argued the term "allowed" as used in the exclusion is ambiguous. Plaintiff admits as much by attempting to introduce evidence of its reasonable expectations under the policy. As Plaintiff points out in its Reply Brief in support of its Motion for Partial Summary Judgment, "expectations of the insured are only disregarded if the language limiting coverage is 'plain, clear and conspicuous.'" (Pl.'s Reply Br. Supporting Mot. for Partial Summ. J at 7) (quoting *Jauregui v. Mid–Century Ins. Co.,* 1 Cal.App.4th 1544, 1552, 3 Cal.Rptr.2d 21 (1991)). If the term "allowed" as used in the exclusion was "plain, clear and conspicuous," Plaintiff would have no need to introduce evidence of its reasonable expectations under the policy. It's attempt to do so implies the term "allowed" is ambiguous, which means "'it is capable of two or more constructions, both of which are reasonable.'" *MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003) (quoting *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 18, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995)).

In the face of ambiguous policy provisions, courts have granted summary judgment in favor of the insurer under the genuine dispute doctrine. *See Krieger,* 181 F.3d at 1123–24; *Franceschi,* 852 F.2d at 1220–21; *Amadeo,* 290 F.3d at 1162 (summary judgment may be awarded under the genuine issue rule where the insurer reasonably construes ambiguous language in its policy). Because the term "allowed" as used in the exclusion is ambiguous, and because Defendant possessed case law supporting its interpretation of the policy language. Defendant is entitled to judgment on the bad faith claim.

## V.

## CONCLUSION AND ORDER

For these reasons, the Court GRANTS Defendant's Motion for Partial Summary Judgment pursuant to the genuine dispute doctrine [Doc. No. 72], and DENIES Plaintiff's Motion for Partial Summary Judgment [Doc. No. 83]. This decision also disposes of Plaintiff's claim for punitive damages and attorneys fees.

**IT IS SO ORDERED.**